IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ERIC DISTEFANO and SARA DISTEFANO,

Plaintiffs,

vs.                                                                                   No. CV09-00995-WDS-RHS

ALLSTATE INSURANCE COMPANY
and JOSE CORNEJO,

Defendants.

# MEMORANDUM MOTION TO REMAND TO STATE COURT FOR LACK OF FEDERAL JURISDICTION

COME NOW, the Plaintiffs in the above-entitled action, by and through counsel, and do hereby move this Court to remand this case to State Court for lack of federal jurisdiction under the Notice of Removal upon the grounds that the Notice fails to confer jurisdiction upon this Court for failure to show complete diversity of citizenship or fraudulent joinder as required by 28 U.S.C. § 1332. Plaintiffs also deny that the Notice of Removal shows the amount in controversy exceeds $75,000. Plaintiffs also seek an award of costs and fees in responding to this Notice of Removal under 28 U.S.C. § 1447. In support of this Motion, Plaintiffs file the following briefing and authorities.

## ISSUES PRESENTED

Plaintiffs initiated this action in State Court by filing a "Complaint For Breach of Contract, Bad Faith Failure to Pay a First Party Claim, Bad Faith Failure to Conduct a Good Faith Investigation, and For Violation Of The New Mexico Insurance Trade Practices and Frauds Act." *See* Exhibit A, Allstate's Notice of Removal ["Notice"]. Plaintiffs joined Allstate Insurance Company ["Allstate"] and José Cornejo ["Cornejo"] as Defendants. *Id.*, at 1.

BERARDINELLI
Law Firm

Plaintiffs allege Cornejo is a resident of New Mexico. *Id.*, ¶ 11. Allstate does not contest this fact in its Notice. Plaintiffs allege Cornejo is, and has been, Allstate's "Market Claims Manager" ["MCM"], for the State of New Mexico since 1996." *Id.*, ¶¶ 11-12. Plaintiffs alleged Cornejo "is the person ultimately and directly responsible for the implementation and enforcement of Allstate's Claims Core Process Redesign ["CCPR"] claim handling practices, procedures and protocols in New Mexico, *including all SIU referral goals and SIU claim handling/investigation practices, procedures and protocols* used by Allstate employees handling *all New Mexico AIC homeowner claims arising* under AIC homeowner policies issued in New Mexico." *Id.*, ¶ 12 (emphasis added).

Further, Plaintiffs allege that Cornejo is *"personally and ultimately responsible for ensuring* that Allstate employees handling *all AIC homeowner claims* arising under New Mexico AIC homeowner policies comply with *all requirements* for fair, prompt and equitable claim practices *set forth in the New Mexico UCPA* [Unfair Claims Practices Act, NMSA 1978, Section 59A-16-20] while handling every New Mexico homeowner claim made under a New Mexico AIC homeowner's policy." *Id.*, ¶ 13 (emphasis added).

Plaintiffs allege that Cornejo "is also *personally and ultimately responsible and/or liable* for all claim handling activities, functions or actions *performed by Allstate employees while handling any New Mexico AIC homeowner* claim arising under an AIC homeowner policy issued in New Mexico *which violate or are defined as unfair, deceptive or fraudulent* under the New Mexico UCPA and the New Mexico ITPFA [Insurance Trade Practices and Frauds Act, NMSA 1978, Section 59A-16-1, *et seq.*]." *Id.*, ¶ 14 (emphasis added).

In addition, Plaintiffs allege "Allstate has established SIU 'referral goals' for *all* New Mexico claims, including homeowner claims. Allstate's SIU referral goals for New Mexico, and the standards established by Allstate for making such referrals *are unfair and deceptive practices* designed primarily to classify numerous New Mexico casualty claims which Allstate knows or should know are legitimate as 'fraudulent' SIU claims." *Id.*, ¶ 33 (emphasis added).

Plaintiffs allege Cornejo "*implemented* [these] *SIU protocols and referral goals*, employee performance management/measurement/review systems, and incentive/bonus

programs in New Mexico which *created incentives for Allstate's claims employees* to deny, delay and minimize legitimate New Mexico homeowner claims made under AIC homeowner policies like the policy issued to Plaintiffs in this case." *Id.*, ¶ 29 (emphasis added). Plaintiffs allege "Cornejo is *directly and personally responsible* [as one of his performance measurements/goals for purposes of bonuses and other performance based incentives] for *ensuring that all adjusters handling New Mexico casualty claims*, including homeowner claims, *meet the SIU referral goals set for New Mexico.*" *Id.*, ¶ 35.

Further, Plaintiffs allege "Cornejo's *overall responsibility for supervising and encouraging* adjusters handling New Mexico casualty claims to meet his New Mexico SIU referral goals for casualty claims proximately *caused Plaintiffs' legitimate homeowner claims to be wrongly referred to the SIU for handling* without any reasonable or proper factual basis or any good faith investigation whatsoever of the facts underlying Plaintiffs' claims." *Id.*, ¶ 36 (emphasis added). Finally, Plaintiffs allege Cornejo's alleged actions were knowing, intentional and constituted violations of the UCPA and the ITPFA. *Id.* ¶¶ 83-85.

Allstate alleges Cornejo's joinder was "fraudulent." Allstate supports this allegation with the cursory and conclusory affidavits of Cornejo and another Allstate employee, David Cortez ["Cortez"]. *See* Notice, Exhibits D, E. Each affidavit consists of four conclusory paragraphs. *Id.* Neither refutes any of these allegations in Plaintiffs' Complaint.

Cornejo states only that he is responsible for claims handled in the New Mexico MCO ["Market Claims Office"]. Exhibit D, ¶ 3. Cornejo does *not* state he has no supervisory responsibility *or* accountability of *any* kind for the referral of SIU [Special Investigative Unit"] homeowner claims arising in New Mexico. Cornejo's affidavit does *not* address or deny Plaintiffs' allegations in ¶¶ 12-14, 19, 35-36, 83. Likewise, Cortez's conclusory affidavit does not dispute or deny any of Plaintiffs' allegations in ¶¶ 12-14, 19, 35-36, 83.

Even if these affidavits did address the contentions in Plaintiffs' Complaint, they would still be insufficient to support diversity jurisdiction in this Court. At most, these affidavits create a "factual dispute" which must be resolved in the State Court and not by this Court under well-established federal law.

Finally, due to the express limitations on coverage for losses of personal property [$2,500 per category or item] stated in the policy, and the very limited number items [seven] Plaintiffs have made claim for, the amount in controversy is well below $75,000. *See* Notice, Exhibit 2, at 8-9. Plaintiffs further stipulate by judicial admission that the amount in controversy, including all damages, interest, applicable costs and attorney fees do not exceed $75,000, and Allstate has not shown otherwise.

Accordingly, this Court lacks subject matter jurisdiction and must remand this case to the State Court pursuant to 28 U.S.C. § 1447.

# LEGAL ARGUMENT

## A.   FRAUDULENT JOINDER

### 1.   Standard For Claims Of Fraudulent Joinder

This Court must consider a number of settled precepts in ruling on this Motion to Remand to State Court for lack of diversity jurisdiction. "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand ***only by demonstrating*** that the non-diverse party was fraudulently joined." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3rd Cir. 1992) (emphasis added).

But the removing party carries a "heavy burden of persuasion" in making this showing. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981) ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one."); *Steel Valley Author. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n. 6 (3d Cir.1987), *cert. dismissed*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988); *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991).

It is logical that Allstate should bear this burden, for removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley*, 809 F.2d at 1010 (citing *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d

Cir.1985)). In this case, Allstate completely fails to meet its "heavy burden" to "demonstrate" that Cornejo joined fraudulently. This failure is fatal to Allstate's Notice of Removal which cannot therefore vest this Court with jurisdiction over this case.

2. **All Ambiguities In State Law Must Be Resolved In Favor Of Plaintiffs**

In *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40 (5th Cir.1992), the standard for evaluating fraudulent joinder claims was summarized as follows:

> Where charges of fraudulent joinder are used to establish [federal] jurisdiction, the removing party has the burden of proving the claimed fraud.... To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court. In evaluating fraudulent joinder claims, *we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party*. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

*Dodson*, 951 F.2d at 42 (citations omitted) (emphasis added); *see also Montano v. Allstate Indemnity*, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir.(N.M.) Apr 14, 2000)[1] (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 247 (5th Cir.2000)).

This standard is more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6). Indeed, where there is any ambiguity about the State law or *disputed questions of fact*, the resolution of whether the Complaint states possibly viable claims against non-diverse defendants "should be left to the state court where the action was commenced." *Montano*, at 2. Here, Plaintiffs allege Cornejo is the overall manager of claims in New Mexico and is therefor responsible and liable for violations of the UCPA committed by any Allstate employee handling New Mexico homeowner claims arising out of Allstate policies issued in New Mexico—regardless of their physical location. Exhibit A, ¶¶ 12-14, 19, 35-36, 83.

Any factual questions or doubts about whether Cornejo's supervisory "span of control" extends to the Arizona adjusters handling Plaintiffs' New Mexico homeowner claims must be decided in Plaintiffs' favor. *Dodson*, 951 F.2d at 42. Likewise, any ambiguities in State law

---

[1] This unpublished Opinion is cited under the terms and conditions of 10th Cir.R. 36.3, on the basis of offensive collateral estoppel and because it has persuasive value with respect to a material issue that has not been addressed in a published opinion. A copy of this Opinion is attached hereto as required by Rule 36.3.

BERARDINELLI Law Firm

concerning whether Cornejo can be held legally liable for violations of the UCPA by Arizona adjusters handling New Mexico claims must also be decided in Plaintiffs' favor. *Id.*

Allstate's conclusory assertions that Cornejo had no supervisory responsibility for the actions of the Allstate adjusters handling Plaintiffs' claims—implying Cornejo could not liable for their alleged violations of the UCPA—merely create factual and legal issues which *must* be resolved by the State Court first. *Dodson*, 951 F.2d at 42.

The jurisdictional inquiry under claim of fraudulent joinder is more strictly limited than the inquiry under a Rule 12(b)(6) motion to dismiss. *Id.* Thus, the Court should not convert its jurisdictional inquiry on a fraudulent joinder claim into a motion to dismiss. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3rd Cir. 1992) ("But the inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted. Accordingly, the district court erred in converting its jurisdictional inquiry into a motion to dismiss.").

The limited jurisdictional inquiry permitted in this case demonstrates a lack of federal diversity jurisdiction mandating remand to the State Court for further determination of the availability of claims against the non-diverse defendant joined in this case.

3.   **To Deny Plaintiffs' Motion For Remand This Court Must Determine Plaintiffs' Claims Are Wholly Insubstantial And Frivolous And There Is No Possibility That Plaintiffs Have Any Cause Of Action Against The Non-Diverse Defendants**

To dismiss a claim against a non-diverse defendant for fraudulent joinder, this Court must determine the claims alleged in the Complaint are, on their face and resolving all factual disputes and ambiguities in state law in Plaintiff's favor, "wholly insubstantial and frivolous." *Montano*, at 2 (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-53 (3d Cir.1992) ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.")); *see also Boyer*, 913 F.2d at 111 (quoting *Abels*, 770 F.2d at 32) (holding joinder is fraudulent

"'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment.'")

But, "'[i]f there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.'" *Boyer*, 913 F.2d at 111 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir.1983)) (emphasis added). Thus, remand is required if any of the claims against the non-diverse defendant is "possibly viable." *Montano*, at 2 (holding that "remand is required if any one of the claims against the non-diverse defendant . . . is *possibly viable*." (emphasis added)).

Here, the determination that Plaintiff's claims are not "wholly frivolous and insubstantial" also precludes any further inquiry into the claims on their merits because diversity jurisdiction does not exist. *Batoff*, 977 F.2d at 852 ("Here, a finding that Batoff's claims are not insubstantial and frivolous has exactly the opposite consequence because it ***precludes consideration of the claims on the merits as the parties are not completely diverse***." (emphasis added)).

Finally, this Court may not find that the non-diverse party was fraudulently joined based on its view of the merits of colorable or possibly viable state law claims. *Batoff*, 977 F.2d at 851 ("Furthermore, we recently have held that 'where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.'" (citations omitted)); *see also Boyer*, 913 F.2d at 113 (citing *Chesapeake & O. Ry. Co. v. Cockrell*, 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914)) ("[W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined ***based on its view of the merits of those claims*** or defenses." (emphasis added)).

B. **CORNEJO'S LIABILITY FOR UCPA VIOLATIONS**

In evaluating Plaintiffs' UCPA claims against Cornejo, the district court must "focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must *assume as true all factual allegations of the complaint.*" *Steel Valley*, 809 F.2d at 1010 (citation omitted) (emphasis added). It also must "resolve any uncertainties as to the current state of controlling substantive law *in favor of the plaintiff.*" *Boyer*, 913 F.2d at 111 (emphasis added). The question of whether Plaintiffs could *possibly* establish a UCPA claim against Cornejo individually in State Court is resolved by reference to New Mexico law. *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000).

Cornejo's potential liability for violations of the UCPA and the ITPFA committed by Allstate employees handling New Mexico claims is now well established. *See Martinez v. Cornejo*, 2009-NMCA-011, ¶¶ 17-19, 146 N.M. 223, 208 P.3d 443. In *Martinez*, the New Mexico Court of Appeals held Cornejo could be held personally liable for violations of the UCPA committed by Allstate adjusters handling New Mexico claims. The allegations against Cornejo in *Martinez* are identical to Plaintiffs' allegations here.

> Cornejo suggests that because Plaintiffs never alleged that he was an adjuster, he cannot be held personally liable even if we hold, as we have, that adjusters, as persons, are included within the definition of insurer and subject to a private right of action. Plaintiffs have alleged that Cornejo was the "Market Claims Manager ... for Allstate's Albuquerque Market Claims Office" and that he was responsible for the "implementation and enforcement of Allstate's claim handling protocols in New Mexico" and for "ensuring that Allstate's New Mexico adjusters and employees comply with all requirements for fair, prompt and equitable claim practices stated in the New Mexico [Unfair Claims Practices Act] while handling every New Mexico [Mandatory Financial Responsibility Act (MFRA), NMSA 1978, §§ 66-5-201 to -239 (1978, as amended through 2003)] claim made under an [New Mexico] Allstate MFRA policy." Plaintiffs' allegations therefore describe conduct sufficient to make Cornejo a "person" subject to the supervision of the superintendent of insurance. Thus, Cornejo, as a manager of a group of insurance adjusters, is a "person[ ] engaged in any business which is now or hereafter subject to the superintendent's supervision under the Insurance Code" and, as such a person, he is included within the meaning of "insurer" for purposes of the TPFA. § 59A-16-1. Because Cornejo falls within the meaning of "insurer," and because a private right of action may be brought against an insurer, we conclude that a private right of action may be brought against Cornejo.

*Id.*, ¶ 19.

BERARDINELLI
Law Firm

Before *Martinez* was decided, this precise issue was also decided adversely to Allstate by Federal District Judge James O. Browning in a nearly identical case involving another improper Allstate removal. *See Allen v. Allstate Ins. Co.*, 2008 WL 6045497, at *1-2 (2008), attached.

In *Allen,* Allstate removed on the basis of an allegedly fraudulent joinder of Allstate adjuster, Betty Alderete ["Alderete"]. *Id.* Allstate supported its fraudulent joinder claim with the affidavit of Alderete claiming she did not perform any adjusting duties with respect Plaintiff's claim and therefore could not liable for violation of the UCPA. Responding to Allstate's same arguments, Judge Browning held:

> It is long-established law that complete diversity is required when federal jurisdiction is founded upon diversity of citizenship. *See Strawbridge v. Curtiss,* 7 U.S. 267 (1806). Because Allen, the Plaintiff, and Alderete, a Defendant, are both citizens of New Mexico, this Court cannot have jurisdiction over the case if Alderete is properly joined. ***Allstate contends that Allen's claims against Alderete are not legally valid and lack a good-faith factual basis and therefore Alderete was fraudulently joined. The Court disagrees. Allstate has not met the rigorous standards required to prove a fraudulent joinder.*** The Court cannot say, at this stage of the case, whether Allen's two claims are well established under New Mexico law. The Court also cannot say, however, that the two claims are not possibly viable against Alderete as an individual. Alderete was therefore properly joined. Accordingly, the Court lacks subject-matter jurisdiction and will remand this case to the state court pursuant to 28 U.S.C. § 1447.
>
> Resolving whether Allen has stated any viable claim against Alderete turns primarily upon the standard of review employed. While *Montano v. Allstate Indemnity Co.* is an unpublished Tenth Circuit case, the Court concludes that it represents the proper standard to be applied when a removing defendant argues that a non-diverse party was fraudulently joined. *Monsanto v. Allstate Indemnity Co.* is in accord with *Smoot v. Chicago, Rock Island & Pac. R.R. Co.,* which although over forty-years old, is the last significant published Tenth Circuit decision on fraudulent joinder. *Smoot v. Chicago, Rock Island & Pac. R.R. Co.* requires that fraudulent joinder be "established with complete certainty upon undisputed evidence." 378 F.2d at 882. *Montano v. Allstate Indemnity Co.* makes clear that the standard "is more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6)." 2000 WL 525592 at *2.
>
> Allstate makes two attacks on Allen's claims. One thrust is against the legal support for her claims, and the other is against the factual basis for her claims. ***Both are ultimately unavailing. Allen is able to show that her claims have sufficient legal merit to withstand a quick, simple analysis, and Allstate's contention that there is no factual foundation for Allen's claims is disputed.***

*Id.,* * 5 (footnotes omitted) (emphasis added).

Berardinelli
Law Firm

Here, as in *Allen,* Allstate has failed to prove fraudulent joinder with the requisite certainty. *Id.* Plaintiffs, on the other hand, have met their burden of establishing their claims against Cornejo, have sufficient legal merit to withstand a quick, simple analysis, and Allstate's contention that there is no factual foundation for Plaintiffs' claims is disputed. Cornejo was not fraudulently joined in this case.

Further, Allstate had no "objectively reasonable" basis for removing this case given the well-established law and the recent adverse ruling by Judge Browning on these same issues. Allstate clearly and deliberately removed this case in bad faith to delay these proceedings and harass these Plaintiffs despite these facts and the law—both of which were well known to it.

### C.   AMOUNT IN CONTROVERSY

As stated, the burden is on the removing party to establish every element supporting federal diversity jurisdiction. *Montano v. Allstate Indemnity*, 211 F.3d 1278. Here, Allstate has provided nothing but conclusory statements without attaching a declarations page to show the coverage limits for personal property under the policy. Plaintiffs' total claims for coverage for the lost items, amount to less than $20,000 under the clear terms of the limitations in the policy—regardless of the total coverage available. Plaintiffs have judicially stipulated that the total amount in controversy, including all damages, punitive damages, costs and attorney fees, do not exceed $75,000. in its Notice Allstate has failed to meet its burden that Federal diversity amount in controversy requirements are met.

Allstate's Notice of Removal is invalid on its face. Diversity does not exist in this case as a matter of law. This Court is without jurisdiction to conduct additional inquiry into the ultimate validity of Plaintiffs' claims. Since this Court lacks subject matter jurisdiction, this case must be remanded to State Court. Plaintiffs should be awarded their costs and attorney fees for bringing this Motion to Remand as provided in 28 U.S.C. § 1447 (c) because Allstate lacked an "objectively reasonable basis" *at this point in the proceedings* to remove this case.

WHEREFORE, Plaintiffs pray this Court as follows:

1.   For this Court's Order remanding this cause to the State Court for lack of diversity jurisdiction under 28 U.S.C. § 1332;

BERARDINELLI Law Firm

-10-

2. For an award of costs and attorney fees incurred in this matter under 28 U.S.C. § 1447 (c); and

3. For such other relief or sanctions as this Court may deem proper under the circumstances.

           Respectfully submitted,

           BERARDINELLI LAW FIRM

           */s/ David J. Berardinelli*
           DAVID J. BERARDINELLI, LLC
           Post Office Box 1944
           Santa Fe, New Mexico 87504-1944
           (505) 988-9664

I hereby certify that on October 23, 2009, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as per the Notice of Electronic Filing and that this pleading was also sent via U.S. Mail to:

Lisa Mann, Esq.
Jennifer A. Noya, Esq.
Modrall, Sperling, Roehl, Harris & Sisk, P.A
Post Office Box 2168
Albuquerque, New Mexico 87103-2168
(505) 848-1899

*/s/ David J. Berardinelli*
DAVID J. BERARDINELLI

BERARDINELLI
Law Firm